**GUSRAE KAPLAN NUSBAUM PLLC**
ATTORNEYS AT LAW

SCOTT H. GOLDSTEIN
MARTIN H. KAPLAN
LAWRENCE G. NUSBAUM

120 WALL STREET-25TH FLOOR
NEW YORK, NEW YORK 10005
———
TEL (212) 269-1400
FAX (212) 809-4147
———

www.gusraekaplan.com

OF COUNSEL
ROBERT L. BLESSEY

May 31, 2023

**VIA ECF**
The Honorable Lorna G. Schofield, United States District Judge
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

     RE: <u>Wentworth Management Services, LLC v. Beckingham</u>, No. 23 Civ. 2660

Dear Judge Schofield:

     My firm represents Plaintiff "**Wentworth**" Management Services, LLC in the above-captioned "**Action**" and writes in response to "**Defendants**'" pre-motion letter. <u>See</u> Dkt. 16 (May 23, 2023) ("**PML**"). Defendants' refusal to analyze the Complaint's actual allegations betrays the baselessness of their Rule 12(b) Motions. <u>Compare generally</u> PML; <u>with</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (in analyzing Rule 12 motions, the court should "assume the[] veracity" of "well-pleaded factual allegations" "and then determine whether they plausibly give rise to an entitlement to relief.").

     In its Complaint, Wentworth alleges that Defendants have initiated two "**FINRA Arbitrations**" against non-party "**Cabot**" Lodge Securities, LLC, which Wentworth indirectly owns. Dkt. 1 ¶¶ 1–5 (Mar. 30, 2023) ("**Complaint**" or "**Compl.**"). In early 2023, Defendants moved to add Wentworth as a respondent in the FINRA Arbitrations, arguing that Wentworth was a Cabot "control person" as defined by the securities laws. Compl. ¶¶ 6, 38. Despite Defendants' desperation to pursue what they apparently believe to be a deep pocket, "Wentworth is not a 'control person' of Cabot or any other FINRA member." <u>Id.</u> ¶ 10. Wentworth "has never exercised any functional control over Cabot," "directed Cabot's day-to-day decision-making," nor "Cabot's high-level strategy." <u>Id.</u> ¶¶ 41–43. Wentworth does not employ or compensate Cabot, and is not a direct shareholder or LLC member of Cabot. <u>Id.</u> ¶ 45–46, 48. While Wentworth is twice-removed from Cabot ownership, that attenuated LLC interest does not make it a "control person" of Cabot. <u>Id.</u> ¶¶ 47, 49.

The Honorable Lorna G. Schofield
May 31, 2023
Page 2

At the March 8, 2023 FINRA oral argument on those motions, Defendants' counsel—who represent Defendants in this federal Action, as well— stated their intention to sue Wentworth in federal court, and admitted that "Wentworth had never agreed to arbitrate any matter with Defendants, and that FINRA had no jurisdiction to hale Wentworth into arbitration." Id. ¶ 7; see also id. ¶ 9 ("Defendants have repeatedly stated that they will sue Wentworth in federal court unless Wentworth voluntarily submits itself to the two FINRA Arbitrations."); id. ¶ 39 ("Defendants have threatened that they will sue Wentworth in federal court and allege Exchange Act 'control person' liability unless Wentworth voluntarily submits itself to both FINRA Arbitrations.'"). Therefore, Wentworth has sued for declaratory judgment that it is not a "control person" of Cabot as defined in the Securities Exchange Act of 1934, and for a permanent injunction staying both Arbitrations against Wentworth. Id. ¶¶ 11, 54, 60.

Although Defendants organize their PML as if they are asserting three separate arguments for Rule 12(b) dismissal, their first and third arguments—that the Complaint fails to plead subject matter jurisdiction or state a claim—both rest on their assumption that Wentworth is "simply wrong on the facts" because Defendants threaten to sue Wentworth for being a "control person" as defined by "**state** [Colorado] law," not as defined by the federal Exchange Act. PML at 2, 3; but see Chan v. HEI Resources, Inc., 512 P.3d 120, 127 (Colo. 2022) (observing that Colorado law requires courts to "coordinate[]" their interpretations of the Colorado Securities act with federal securities law, and that the Colorado Supreme Court "ha[s] consistently recognized that" "federal authorities are highly persuasive").; cf. Franchise Tax Bd. v. Constr. Laborers Vacation Tr., 463 U.S. 1, 22 (1983) (citation omitted) ("[A] plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint."). Even if Defendants' arguments could trump Wentworth's allegations—they cannot—Defendants' distinction makes no difference: the federal securities and Colorado securities laws identically define "control person." Stat-Tech Liquidating Tr. v. Fenster, 981 F. Supp. 1325, 1336–37 (D. Colo. 1997).

But Defendants' disagreement with the Complaint's underlying facts is no basis for 12(b)(1) or 12(b)(6) dismissal: in analyzing either motion, this Court must "constru[e] the complaint in [Wentworth's] favor and accept[] as true all material factual allegations contained therein." Katz v. Donna Karan Co., 872 F.3d 114, 118 (2d Cir. 2017) (Rule 12(b)(1)); Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (Rule 12)(b)(6)). And while federal courts generally may consider outside materials to resolve disputed jurisdictional facts, if—as Defendants argue in the PML—"resolution of the jurisdictional question is intertwined with the merits of the case," the Court should allow the parties to pursue jurisdictional discovery. Redmond v. United States, 934 F.2d 1151, 1155 (10th Cir. 1991) (converting fact-based 12(b)(1) motion into Rule 56 motion); accord Katz, 872 F.3d at 121 (quoting Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 149 (2d Cir. 2011) (per curiam)) ("[P]recisely because the plaintiff bears the burden of alleging facts demonstrating standing, we have encouraged district courts to 'give the plaintiff ample

The Honorable Lorna G. Schofield
May 31, 2023
Page 3

opportunity to secure and present evidence relevant to the existence of jurisdiction' where necessary.").

Defendants also misrepresent the Declaratory Judgment Act's ("**DJA**") purpose, application, and caselaw. Compare PML at 2 (purporting to cite Dow Jones & Co. v. Harrods, 346 F.3d 357, 359–60 (2d Cir. 2003) (arguing that Dow Jones "explain[s] that whether an action appears to be 'procedural fencing' weighs against exercising jurisdiction") with Dow Jones, 346 F.3d at 359–60 (the Second Circuit's "simple test[] asks (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty," and rejecting appellant's argument that the district court should have more strongly weighed other circuits' factors, including "procedural fencing."). By alleging that Defendants have "threatened" to baselessly sue them in federal court, Wentworth has more than satisfied the DJA's requirements. See MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 133 (2007) (quoting Willing v. Chicago Auditorium Ass'n, 277 U.S. 274, 288 (1928) (Article III "case or controversy" exists if defendant "ha[s] wronged the plaintiff or ha[s] threatened to do so," and observing that federal courts "have long accepted [DJA] jurisdiction" where "the plaintiff's self-avoidance of imminent injury is coerced by threatened enforcement action of a private party.") (emphasis removed).

Finally, Defendants' venue arguments again ignore the Complaint's facts. Compare PML at 3 ("There is no close nexus to the Southern District of New York, and therefore venue cannot be supported.") (citing nothing) with Compl. ¶ 14 (Wentworth's "primary place of business is Manhattan"). Section 27 of the Exchange Act allows venue in any district. See 15 U.S.C. § 78aa(a). Besides that securities-specific provision, 28 U.S.C. § 1391(b) also allows venue here in the Southern District, where "a substantial part of the events or omissions giving rise to the claim occurred," and where this Action's material witnesses live and work. Leroy v. Great Western United Corp., 443 U.S. 173, 185 (1979) (citing S. Rep. No. 1752, 89th Cong., 2d Sess. 3 (1966)) (Section 1391 allows venue in the district convenient for "the witnesses who are to testify in the case."). In fact, Defendants already have told the Court that all of this Action's evidence pertains to relationship between Manhattan-based Wentworth and Manhattan-based Cabot. See Dkt. 12 at 4 § 5 (May 17, 2023). Finally, venue also is proper here because all of Defendants' Arbitration claims, and any potential federal Action counterclaims, arise out of Defendants' purposeful availment of New York-based services.

                                               Respectfully submitted,

                                               /s/ Kari Parks
                                               Kari Parks

CC: All counsel of record (via ECF)